UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LIQING JIANG,<br><br>                     Plaintiff,<br><br>          -against-<br><br>CITIBANK, N.A.; MACY'S, INC.; TRANS UNION LLC a/k/a TRANSUNION; EXPERIAN INFORMATION SOLUTIONS, INC.; and EQUIFAX INFORMATION SERVICES LLC,<br><br>                 Defendants. | Civil Action<br>Case No.: 2:24-cv-3321<br><br>**COMPLAINT** |

Plaintiff Liqing Jiang ("Plaintiff"), by and through her attorneys, Petroff Amshen LLP, as and for her complaint against the defendants named herein (collectively, "Defendants"), hereby alleges the following upon personal knowledge, review of public record, and/or otherwise upon information and belief:

1.    Plaintiff brings this action for damages arising under the Fair Credit Reporting Act ("FCRA") (15 U.S.C. § 1681, *et seq.*) and the Fair Debt Collection Practices Act ("FDCPA") (15 U.S.C. § 1692, *et seq.*), resulting from Defendants' numerous, willful, and ongoing violations of the foregoing federal consumer protection laws.

2.    Plaintiff moved to the United States more than a decade ago to pursue the "American Dream" and settled down with her family in the quiet hamlet of Selden in 2013, more than an hour drive from the hustle and bustle of the boroughs of New York City.  Plaintiff purchased a home, began building her credit, and maintained a perfect credit history for nearly ten years – until her identity was stolen, and the "American Dream" quickly turned into a nightmare.

3.      Unbeknownst to Plaintiff, an identity thief stole her personal information and used this information to gain access to one of Plaintiff's credit card accounts, obtain a card in her name, and make dozens of fraudulent purchases totaling nearly $10,000.00.

4.      Despite meticulously building a credit history devoid of a single missed or late payment on any account, Plaintiff's credit has now been severely damaged as a result of the theft and inaccurate credit reporting associated with these fraudulent transactions.

5.      Upon discovering that a credit card in her name was being used to make fraudulent purchases, Plaintiff took immediate action to report the fraud and to restore her good credit. Although Plaintiff repeatedly disputed the fraudulent transactions and inaccurate credit reporting, the Defendants refused to undertake any investigation of her claims, and continued reporting misinformation.

6.      Defendants' (i) failure to maintain accurate records and report accurate information regarding Plaintiff's account, (ii) repeated refusal to properly investigate and correct errors in response to Plaintiff's multiple verbal and written disputes, and (iii) continued collection activities despite these ongoing failures and unlawful actions, have caused significant damage to Plaintiff's finances, credit, and overall mental state.

## **PARTIES**

7.      Plaintiff is an individual and resident of the State of New York, County of Suffolk, residing at 13 Days Avenue, Selden, New York 11784 (the "Suffolk Property").

8.      Defendant Citibank, N.A. ("Citibank") is a national banking association organized and existing under the laws of the United States of America, with its principal place of business at 5800 South Corporate Place, Sioux Falls, South Dakota 57108, and New York headquarters at 399 Park Avenue, New York, New York 10022.

9.      Defendant Macy's, Inc. ("Macy's") is a corporation incorporated under the laws of the State of Delaware, with its principal place of business at 151 West 34th Street, New York, New York 10001.  Macy's aggressively markets and promotes its company-branded credit card programs to consumers, including the Macy's American Express® Card, which offer company-related "benefits" to cardholders.

10.     Citibank is the "issuer" of the Macy's American Express® Card.  Upon information and belief, the issuer was previously Department Stores National Bank, which merged into Citibank effective July 1, 2022.  In credit reports supplied to Plaintiff by the consumer reporting agencies named herein, the Macy's American Express® Card issued by Citibank is referred to as "AMEX/CBNA".

11.     Defendant Trans Union LLC is a limited liability company organized under the laws of the State of Delaware, with its principal place of business at 555 West Adams Street, Chicago, Illinois 60661.  The company is also known as "TransUnion", and shall be referred to as such herein.  TransUnion is one of the three national credit reporting agencies recognized by the Federal Trade Commission ("FTC").

12.     Defendant Experian Information Solutions, Inc. ("Experian") is a corporation incorporated under the laws of the State of Ohio, with its principal place of business at 475 Anton Boulevard, Costa Mesa, California 92626.  Experian is a wholly owned subsidiary of Experian Holdings, Inc.  Experian is one of the three national credit reporting agencies recognized by the FTC.

13.     Defendant Equifax Information Services LLC ("Equifax") is a limited liability company organized under the laws of the State of Georgia, with its principal place of business at

1550 Peachtree Street NW, Atlanta, Georgia 30309.  Equifax is a wholly owned subsidiary of Equifax Inc.  Equifax is one of the three national credit reporting agencies recognized by the FTC.

## JURISDICTION

14.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as Plaintiff's claims substantially arise under federal law.

15.     Venue in this district is proper pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events giving rise to Plaintiff's claims occurred in this district, and Plaintiff resides in this district.

## STATEMENT OF FACTS

16.     Plaintiff purchased the Suffolk Property in 2013, which she has maintained as her sole and primary residence ever since.  The Suffolk Property is a single-family home located in Suffolk County, New York.

17.     On or about February 5, 2018, using her Suffolk Property address, Plaintiff opened a Macy's American Express® Card with an account number ending in -9140 (the "Macy's Amex").

18.     Plaintiff is the only authorized user of the Macy's Amex, and has been the only authorized user since the account was opened.

19.     Plaintiff has not used the Macy's Amex, or authorized any purchases to be made with the Macy's Amex, since in or about January 2020.

20.     As reflected in Plaintiff's credit reports, the last payment she made on the account was on or about February 18, 2020, at which time she paid the amount due and account balance in full.

21.     Plaintiff did not make any purchases, or authorize any transactions, with the Macy's Amex after the closing date of the statement for the payment made on or about February 18, 2020.

22.     The only Macy's Amex in Plaintiff's possession expired in March of 2021. Plaintiff never requested or received a replacement or renewal card, and has never been in possession of a Macy's Amex with a "valid thru" date beyond "03/21":



**A.     Macy's Notifies Plaintiff of Suspicious Activity on Her Account.**

23.     In or about September 2022, Plaintiff first learned that there was "suspicious activity" on her Macy's Amex, after receiving a suspicious activity letter ("SAL") from Macy's Fraud Prevention-Cardholder Protection Department, dated September 12, 2022 (the "September 2022 SAL"). A copy of the September 2022 SAL is annexed hereto as **Exhibit A**.

24.     The September 2022 SAL was addressed and mailed to Plaintiff at the Suffolk Property, with the addition of "Apt 1A" in the address line, even though the Suffolk Property is a single-family home and contains no separately designated apartment units:



*See* Ex. A.

25.     Plaintiff has never provided an address with an apartment number in connection with the Macy's Amex account, nor has she ever authorized a change in address on the account from the Suffolk Property address.

26.     The September 2022 SAL advised:

> We need to verify recent activity on your Macy's American Express® Card account. Based on routine account monitoring, <u>we discovered that your account has suspicious activity</u>. We strongly encourage you to contact us toll-free at the phone number below to review your account activity. . . .
>
> For your protection, if you attempt to use your card prior to calling us, merchants may request that you provide information to verify your identity before they approve transactions.

*See* Ex. A (emphasis added).

27.     Although Macy's determined there was "suspicious activity" on the account warranting investigation, and encouraged Plaintiff to contact them to review and verify this activity, Plaintiff's repeated attempts to challenge and remove the fraudulent charges from her account were futile.

**B.      Fraudulent Charges to the Macy's Amex.**

*i.      The September 2022 Statement.*

28.     After receiving the September 2022 SAL, Plaintiff contacted Macy's and obtained a copy of a statement for the Macy's Amex reflecting a balance of $28.84, with a statement closing date of August 10, 2022, and payment due date of September 6, 2022 (the "September 2022 Statement"). A copy of the September 2022 Statement is annexed hereto as **Exhibit B**.

29.     Plaintiff had not received the September 2022 Statement because it was addressed to 3031 W 23rd Street, Apt. 1A, Brooklyn, New York 11224 (the "Fraudulent Address"), an address Plaintiff does not recognize and never provided in connection with the Macy's Amex account:



*See* Ex. B.

30.     Upon information and belief, without Plaintiff's knowledge, an unknown and unauthorized individual illegally obtained her personal information and used this information to change the address on Plaintiff's account, from her residence at the Suffolk Property, to the Fraudulent Address.

31.     The Fraudulent Address is located in a dilapidated multi-unit building in the Coney Island neighborhood of Brooklyn, more than 60 miles away from Plaintiff's home in Suffolk County.

32.     Plaintiff has never lived at the Fraudulent Address, and never authorized it to be added to, or substituted on, the account.  Plaintiff has also never been to the Fraudulent Address, and she has never received mail there.

33.     Upon information and belief, after successfully changing the account address from the Suffolk Property to the Fraudulent Address, the unauthorized individual illegally obtained the Macy's Amex by requesting a replacement card that was mailed to the Fraudulent Address.

34.     Upon information and belief, after changing the account address to the Fraudulent Address, Macy's did not send a verification letter or other communication to Plaintiff to confirm the address change was authorized.

35.     The September 2022 Statement reflects what appears to be two initial fraudulent "test" charges made on the Macy's Amex.  The first, made on July 19, 2022, appears to be for a

Netflix subscription out of California, in the amount of $19.99.  The second, made on July 20, 2022, in the amount of $8.85, was for an Uber trip in San Francisco, California:

| Transactions outside of Macy's | | | |
|---|---|---|---|
| Transaction Date | Description | Location | Amount |
| Jul 19 | NETFLIX.COM | NETFLIX.COM CA | $19.99 |
| Jul 20 | UBER TRIP | SAN FRANCISCOCA | $8.85 |

*See* Ex. B.

36.     Plaintiff was not in California on or near these dates, and did not make or authorize these charges on the Macy's Amex.

37.     Because Plaintiff does not reside in or near California (even the Fraudulent Address added to the account is located in New York), and had not used the Macy's Amex for more than two years, these charges clearly should have been flagged as "suspicious activity" on Plaintiff's account.

38.     Plaintiff should have been immediately notified of any "suspicious activity" on the account.

39.     Although the "suspicious activity" began on or about July 19, 2022, Macy's did not send the September 2022 SAL advising Plaintiff of this activity until nearly two months later, after thousands of dollars in additional fraudulent charges had accrued on the account.

40.     Inexplicably, the September 2022 Statement was addressed and mailed to the Fraudulent Address, but the September 2022 SAL – which post-dated the September 2022 Statement – was addressed and mailed to the Suffolk Property (with the incorrect addition of "Apt 1A" in the address line, apparently taken from the Fraudulent Address).  *See* Exs. A, B.

*ii.     The October 2022 Statement.*

41.     After the September 2022 Statement, the next statement reflects a balance of $3,621.15, with a statement closing date of September 9, 2022, and payment due date of October

6, 2022 (the "October 2022 Statement"). A copy of the October 2022 Statement is annexed hereto as **Exhibit C**.

42.     The October 2022 Statement includes a "past due" amount of $28.84 (the balance from the September 2022 Statement), plus an added late fee and interest. *See* Ex. C.

43.     The October 2022 Statement also states that the "account is past due," and includes debt collection language:



*See* Ex. C.

44.     Like the September 2022 Statement, the October 2022 Statement was addressed and mailed to the Fraudulent Address, so Plaintiff never received it:



*See* Ex. C.

45.     The October 2022 Statement includes nine (9) separate "Macy's transactions" totaling $3,364.01 – eight (8) at the "Queens Center" Macy's, and one (1) at the "Herald Square" Macy's – between August 20 and August 24, 2022, for luxury items including jewelry, designer handbags, and a gift card:

**Macy's transactions**

| Transaction Date | Description | Location | Amount |
|---|---|---|---|
| Aug 24 | PAYMENT - THANK YOU | | -$2,606.46 |
| Aug 20 | BRIDGE PRECIOUS METALS - GOLD STUD EARS | QUEENS CENTER | $99.00 |
| | CHARITY | | $0.21 |
| | SALES TAX | | $8.79 |
| | **RECEIPT TOTAL** | | **$108.00** |
| Aug 20 | BETTER WATCHES - MENS LEATHER | QUEENS CENTER | $319.95 |
| | SALES TAX | | $28.40 |
| | **RECEIPT TOTAL** | | **$348.35** |
| Aug 22 | MENS JEWELRY SPECIAL - CHAINS | QUEENS CENTER | $1,170.00 |
| | SALES TAX | | $103.84 |
| | **RECEIPT TOTAL** | | **$1,273.84** |
| Aug 22 | M.MICHAEL KORS HANDBAG - SIGNATURE HANDBAGS | QUEENS CENTER | $228.00 |
| | BAG FEE | | $0.05 |
| | CHARITY | | $0.71 |
| | SALES TAX | | $20.24 |
| | **RECEIPT TOTAL** | | **$249.00** |

**Macy's transactions** (cont.)

| Transaction Date | Description | Location | Amount |
|---|---|---|---|
| Aug 22 | MICHAEL KORS SLGS - CROSSBODIES (HANDBAGS) | QUEENS CENTER | $158.00 |
| | M.MICHAEL KORS HANDBAG - SEASONAL HANDBAGS | | $178.80 |
| | BAG FEE | | $0.05 |
| | CHARITY | | $0.26 |
| | SALES TAX | | $29.89 |
| | **RECEIPT TOTAL** | | **$367.00** |
| Aug 22 | GIFT CERTIFICATES | QUEENS CENTER | $100.00 |
| | **RECEIPT TOTAL** | | **$100.00** |
| Aug 23 | COACH HANDBAGS - COLORBLOCK LEATHER | QUEENS CENTER | $450.00 |
| | BAG FEE | | $0.05 |
| | SALES TAX | | $39.94 |
| | **RECEIPT TOTAL** | | **$489.99** |
| Aug 23 | M.MICHAEL KORS HANDBAG - SAFFIANO LEATHER | QUEENS CENTER | $104.30 |
| | BAG FEE | | $0.05 |
| | SALES TAX | | $9.26 |
| | **RECEIPT TOTAL** | | **$113.61** |
| Aug 23 | M.MICHAEL KORS HANDBAG - SIGNATURE HANDBAGS | QUEENS CENTER | $149.00 |
| | SALES TAX | | $13.22 |
| | **RECEIPT TOTAL** | | **$162.22** |
| Aug 24 | L'OREAL WMNS FRAGRANCE - YSL BLACK OPIUM | HERALD SQUARE | $139.00 |
| | CHARITY | | $0.66 |
| | SALES TAX | | $12.34 |
| | **RECEIPT TOTAL** | | **$152.00** |
| Aug 24 | PAYMENT REVERSAL | | $2,606.46 |

*See* Ex. C.

46.     Upon information and belief, the "Queens Center" Macy's is located in the Queens Center Mall, at 9001 Queens Boulevard, Elmhurst, New York 11373.  This location is more than 50 miles away from Plaintiff's residence at the Suffolk Property.

47.     Plaintiff was not at the Queens Center Macy's on the dates the above charges were made, and did not authorize the transactions.

48.     Upon information and belief, Macy's "Herald Square" is the company's flagship department store and its corporate headquarters, located at 151 West 34th Street, New York, New York 10001.  This location is 57 miles away from the Suffolk Property.

49.     Plaintiff was not at the Herald Square Macy's on the dates the above charges were made, and did not authorize the transactions.

50.     Upon information and belief, in an attempt to appear as the authorized account holder when making these fraudulent purchases, on August 24, 2022, the unknown individual also made a fictitious "payment" to the account in the amount of $2,606.46, which was later reversed that same day.  *See* Ex. C.

51.     The October 2022 Statement also includes five (5) "[t]ransactions outside of Macy's" totaling $148.18, between August 20 and August 23, 2022.  *See* Ex. C.  Three of the transactions, all dated August 20, were made in Elmhurst/Queens, New York.  *See id.*  The other two were another Netflix California charge, and what appears to be a food or beverage vendor in San Francisco, California:

| Transactions outside of Macy's | | |
| --- | --- | --- |
| Transaction Date | Description | Location | Amount |
| Aug 20 | AUNTIE ANNES PRETZELS US | ELMHURST   NY | $27.72 |
| Aug 20 | TARGET     032805 0910 | ELMHURST   NY | $57.94 |
| Aug 20 | SIMPLY FRESH | QUEENS    NY | $24.01 |
| Aug 22 | NETFLIX.COM | NETFLIX.COM  CA | $21.76 |
| Aug 23 | SNACK* TIGER SUGAR (QU | SAN FRANCISCOCA | $16.75 |

*See* Ex. C.

52.     Plaintiff was not in any of the locations listed on the October 2022 Statement on the dates of the listed transactions, and did not make or authorize any of the charges.

### *iii.*     *The November and December 2022 Statements.*

53.     While Plaintiff was unaware of the ongoing activity on her account because the statements were being mailed to the Fraudulent Address, and Macy's had failed to notify her of any of the suspicious charges that began on July 19, 2022, the unknown individual continued the fraudulent spending spree through the end of October 2022.  By that time, the unknown individual had racked up nearly $10,000.00 in fraudulent, unauthorized charges on the Macy's Amex.

54.     The statement closing October 10, 2022, with a payment due date of November 6, 2022 (the "November 2022 Statement"), reflects a balance of $3,749.00.  A copy of the November 2022 Statement is annexed hereto as **Exhibit D**.

55.    The November 2022 Statement states that the "account is 2 payments past due," and includes debt collection language:



*See* Ex. D.

56.    The November 2022 Statement includes an additional fictitious "payment" by the unknown individual in the amount of $2,000.00, which was also reversed the same day.  As a result, a returned payment fee was added to the account, plus an additional late fee and interest. *See* Ex. D.

57.    The November 2022 Statement was also improperly addressed and mailed to the Fraudulent Address:



*See* Ex. D.

58.    Although Plaintiff contacted Macy's multiple times to dispute the fraudulent charges and revert the account address to the Suffolk Property, Macy's still failed to secure Plaintiff's account, allowing the unknown individual to rack up thousands of dollars in additional fraudulent charges at the end of October.

59.     The statement closing November 9, 2022, with a payment due date of December 6, 2022 (the "December 2022 Statement"), reflects a balance of $9,169.93 – nearly triple the balance of the October 2022 Statement.   A copy of the December 2022 Statement is annexed hereto as **Exhibit E**.

60.     The December 2022 Statement was finally addressed to the Suffolk Property, but by then, the damage was already done.  The December 2022 Statement states that the "account is 3 months past due," and includes debt collection language:



*See* Ex. E.

61.     The December 2022 Statement includes multiple transactions at the Queens Center and Herald Square Macy's totaling $3,332.08, for clothing, housewares, and luxury handbags and fragrances:

| Macy's transactions | | | |
| --- | --- | --- | --- |
| Transaction Date | Description | Location | Amount |
| Oct 20 | PAYMENT - THANK YOU | | -$500.00 |
| Oct 26 | PAYMENT - THANK YOU | | -$8,037.29 |
| Oct 20 | PAYMENT REVERSAL | | $500.00 |
| Oct 21 | LUX HDBG/ACC | HERALD SQUARE | $2,230.00 |
| | LUX HDBG/ACC | | $280.00 |
| | BAG FEE | | $0.05 |
| | CHARITY | | $0.19 |
| | SALES TAX | | $222.76 |
| | **RECEIPT TOTAL** | | **$2,733.00** |
| Oct 22 | PB TOWELS - HOTEL MICRO COTTON | QUEENS CENTER | $22.79 |
| | PB TOWELS - HOTEL FINEST TOWELS | | $60.00 |
| | CALVIN KLEIN JEANS - SWEATERS | | $29.86 |
| | MARTHA STEWART WHIM - WHIM TEXTILES ACCESSORIES | | $25.00 |
| | CHARITY | | $0.78 |
| | SALES TAX | | $9.57 |
| | OTHER PAY TYPE | | -$140.00 |
| | **RECEIPT TOTAL** | | **$8.00** |
| Oct 22 | CHANEL FRAGRANCES - COCO MADEMOISELLE | QUEENS CENTER | $146.00 |
| | CHANEL FRAGRANCES - CHANCE | | $146.00 |
| | BPI WOMENS FRAGRANCE - NARCISO RODRIGUEZ | | $114.00 |
| | BAG FEE | | $0.05 |
| | SALES TAX | | $36.03 |
| | **RECEIPT TOTAL** | | **$442.08** |
| Oct 23 | GADGETS - PANTRY | QUEENS CENTER | $39.00 |
| | PB PILLOWS/PADS - HOTEL MATTRESS PAD | | $81.00 |
| | CASUAL CHINA - MUGS | | $15.98 |
| | BAG FEE | | $0.05 |
| | CHARITY | | $0.90 |
| | SALES TAX | | $12.07 |
| | **RECEIPT TOTAL** | | **$149.00** |
| Oct 25 | REFUND RETURN PMT FEE | | -$29.00 |
| Oct 26 | PAYMENT REVERSAL | | $8,037.29 |

*See* Ex. E.

62.     The December 2022 Statement includes two additional fictitious "payments" by the unknown individual in the amounts of $500.00 and $8,037.29, both of which were also reversed the same day they were made.  As a result, another returned payment fee was added to the account, plus an additional late fee and interest.  *See* Ex. E.

63.     The December 2022 Statement also includes more than two dozen additional transactions outside of Macy's, totaling $1,880.06:

**Transactions outside of Macy's**

| Transaction Date | Description | Location | Amount |
|---|---|---|---|
| Oct 22 | T-MOBILE STORE # 4110 000 | ELMHURST   NY | $700.79 |
| Oct 22 | WHITE CASTLE  100016 WHIT | ELMHURST   NY | $75.87 |
| Oct 22 | GAS SALE | ELMHURST   NY | $94.02 |
| Oct 23 | TMOBILE WEB ORDER | 800-672-5390 WA | $79.01 |
| Oct 24 | GOOGLE *HOF | G.CO/HELPPAY#CA | $2.17 |
| Oct 24 | GOOGLE *HOF | G.CO/HELPPAY#CA | $1.08 |
| Oct 24 | AYADA THAI 0001 | ELMHURST   NY | $78.39 |
| Oct 24 | GOOGLE *GOOGLE PLAY | G.CO/HELPPAY#CA | $3.26 |
| Oct 24 | GOOGLE *GOOGLE PLAY | G.CO/HELPPAY#CA | $3.26 |
| Oct 25 | STOP & SHOP #509 | MASPETH   NY | $60.00 |
| Oct 25 | GOOGLE *HOF | G.CO/HELPPAY#CA | $2.17 |
| Oct 25 | MCDONALD'S F2293 00000000 | ELMHURST   NY | $21.08 |

**Transactions outside of Macy's** (cont.)

| Transaction Date | Description | Location | Amount |
|---|---|---|---|
| Oct 25 | TARGET     032805 0910 | ELMHURST   NY | $8.18 |
| Oct 25 | THE HOME DEPOT 1220 | GLENDALE   NY | $428.94 |
| Oct 25 | SPEEDWAY 07808 000007808 | ELMHURST   NY | $39.17 |
| Oct 27 | GOOGLE *GOOGLE PLAY | G.CO/HELPPAY#CA | $5.43 |
| Oct 27 | BR FACTORY US 2958 | JACKSON HEIGHNY | $171.99 |
| Oct 27 | DUANE READE #14431 000014 | JACKSON HEIGHNY | $7.60 |
| Oct 29 | AMZN MKTP US*H07Q782B0 | AMZN.COM/BILLWA | $21.76 |
| Oct 29 | GOOGLE *HOF | G.CO/HELPPAY#CA | $1.08 |
| Oct 29 | AMZN MKTP US*H07TC35C1 | AMZN.COM/BILLWA | $20.68 |
| Oct 29 | AMZN MKTP US*H84N68YI2 | AMZN.COM/BILLWA | $6.52 |
| Oct 29 | AYADA THAI 0001 | ELMHURST   NY | $34.57 |
| Oct 30 | GOOGLE *HOF | G.CO/HELPPAY#CA | $1.08 |
| Oct 30 | GOOGLE *GOOGLE PLAY | G.CO/HELPPAY#CA | $9.79 |
| Oct 30 | GOOGLE *HOF | G.CO/HELPPAY#CA | $2.17 |

*See* Ex. E.

64.     Plaintiff was not in any of the locations listed on the November or December 2022 Statements on the dates of the listed transactions, and did not make or authorize any of the charges.

**C.     Further Mishandling of the Macy's Amex Account.**

65.     Plaintiff repeatedly contacted Macy's to dispute the fraudulent charges and activity on her Macy's Amex, to no avail.  Although Plaintiff advised Macy's on multiple occasions that an unauthorized individual had obtained her account information and was making fraudulent

purchases with the Macy's Amex, Macy's allowed the fraudulent activity to continue unhindered for months.

66.     Macy's also persistently and repeatedly sought to collect the fraudulent debt from Plaintiff, despite having knowledge and evidence of the identity theft and unauthorized use of Plaintiff's account.

67.     Then, on or about November 23, 2022, Macy's sent Plaintiff a letter advising that it had closed the Macy's Amex; not because of the fraudulent activity Plaintiff reported on the account, but because of "[o]ne or more occurrences of late or returned payments in the last 6 months" (the "Account Closing Letter").  A copy of the Account Closing Letter is annexed hereto as **Exhibit F**.

68.     After closing the account, Macy's continued its improper collection efforts, tacking on additional fees and interest with each new statement period.

69.     The next statement following the Account Closing Letter, with a closing date of December 9, 2022, and a payment due date of January 6, 2023 (the "January 2023 Statement"), reflects a balance of $9,430.94.  A copy of the January 2023 Statement is annexed hereto as **Exhibit G**.

70.     Although the January 2023 Statement does not reflect any further purchases made on the Macy's Amex, it does include a late fee and interest on the prior fraudulent charges Plaintiff repeatedly disputed.  *See* Ex. G.

71.     Likewise, the following statement with a closing date of January 10, 2023, and a payment due date of February 6, 2023 (the "February 2023 Statement"), reflects an increased balance of $9,717.83, due to the improper addition of another late fee and interest on the fraudulent charges.  A copy of the February 2023 Statement is annexed hereto as **Exhibit H**.

72.     On or about January 27, 2023, months after sending the Account Closing Letter and closing the account, Macy's sent Plaintiff another "suspicious activity" letter essentially identical to the September 2022 SAL (the "January 2023 SAL").  A copy of the January 2023 SAL is annexed hereto as **Exhibit I**.

73.     Macy's recognized and acknowledged on multiple occasions that there appeared to be unauthorized activity on Plaintiff's account.  But when Plaintiff confirmed these suspicions and disputed the unauthorized charges, Macy's ignored Plaintiff's pleas for help, and did nothing to secure the account or prevent additional fraudulent activity.

**D.      Failure to Investigate or Resolve Plaintiff's Fraud Dispute Claims.**

74.     Plaintiff did not make or authorize any of the transactions or purchases made on the Macy's Amex from July 2022 until the account was closed in November 2022.

75.     Plaintiff contacted Macy's repeatedly to obtain additional information on the account status and to dispute the charges, but received no assistance or resolution.

76.     Instead, Macy's failed and refused to investigate the "suspicious" account activity, maintained its position that Plaintiff was responsible for the outstanding balance on the account, and continued its efforts to collect the fraudulent debt from Plaintiff.

77.     In or about March of 2023, Plaintiff submitted a written fraud claim to Macy's, which it acknowledged by letter dated March 17, 2023 (the "Fraud Claim Acknowledgment").  A copy of the Fraud Claim Acknowledgment is annexed hereto as **Exhibit J**.

78.     The Fraud Claim Acknowledgment advised: "We will contact you if additional information is needed to complete the investigation."  *See* Ex. J.

79.     Macy's never contacted Plaintiff for additional information.

80.     Several months later, by letter dated June 15, 2023 (the "First Fraud Claim Denial"), Macy's advised: "We have completed our investigation regarding your claim of unauthorized use on the above referenced account.  Based on our review, we have determined that you are responsible for the charges in question."  A copy of the First Fraud Claim Denial is annexed hereto as **Exhibit K**.

81.     Instead of properly investigating the fraudulent activity on her account, or asking Plaintiff for additional information relevant or necessary to the investigation, Macy's simply denied the claim, stating:

> **Here's what you need to know**
> Our decision was based, in part, on the following:
>
> - We've conducted our investigation using the information that you provided about the dispute. With the information we had, it wasn't enough to support your claim and resolve the dispute in your favor.
> - A review of your account shows your card(s) is protected with an embedded chip and was used at a chip enabled card reader. This technology helps ensure your account can only be accessed by the card that was issued by us and not by counterfeit cards.  Because the card was in your possession (or if applicable, in the possession of an authorized user on the account), the charges in question are not considered fraudulent activity.
>
> As a result, we have re-billed your account and consider our investigation complete.

*See* Ex. K.

82.     Even a cursory review of Plaintiff's account would have revealed that the "embedded chip" card allegedly used in the fraudulent transactions was <u>not</u> in Plaintiff's possession because it was mailed to the Fraudulent Address, and not to Plaintiff at the Suffolk Property.

83.     After Macy's failed to complete a proper investigation of the fraud claim, Plaintiff continued to dispute the unauthorized transactions, resulting in a second incomplete investigation and fraud claim denial on or about November 9, 2023 (the "Second Fraud Claim Denial").  A copy of the Second Fraud Claim Denial is annexed hereto as **Exhibit L**.

84.     Macy's then continued its improper debt collection activities against Plaintiff, and negative credit reporting regarding the account.

85.     Accordingly, Plaintiff filed a police report regarding the fraud with the Suffolk County Police Department, and an identity theft report with the FTC (collectively, the "Identity Theft Reports").  Plaintiff also submitted a written notice of dispute to each of the Defendants, advising of the identity theft, fraudulent transactions, and inaccurate credit reporting (the "Notice of Dispute").

86.     Plaintiff attached to the Notice of Dispute copies of the Identity Theft Reports, along with her personal identification, proof of address at the Suffolk Property, and other relevant information; and requested an investigation and correction to her credit report.  A copy of the Notice of Dispute is annexed hereto as **Exhibit M**.

87.     Nonetheless, the Defendants failed to undertake a timely or proper investigation into the identity theft and fraudulent transactions, and did not respond to Plaintiff's Notice of Dispute.

88.     Thereafter, Macy's and Citibank failed to cease or correct their inaccurate credit reporting regarding Plaintiff's Macy's Amex account, Macy's failed to cease debt collection activities, and TransUnion, Experian, and Equifax failed to correct or remove inaccurate information from Plaintiff's credit reports, causing Plaintiff significant damage.

## VIOLATIONS OF THE FCRA
### (15 U.S.C. § 1681, *et seq.*)

89.     Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

90.     Plaintiff is a "consumer" as defined by the FCRA.  *See* 15 U.S.C. § 1681a(c).

91.     Correspondence and billing statements regarding the Macy's Amex state that the "Macy's American Express Card program is issued and administered by Citibank, N.A.," and identify Citibank as the "creditor" of the account.

18

92.     All correspondence and billing statements regarding the account come from Macy's, on Macy's letterhead.

93.     The fraud claim denial letters from Macy's state that "Federal Regulations require us to remind you that <u>we</u> may report your account as past due to the consumer reporting agencies [Equifax, Experian, and TransUnion] . . . if we do not receive the minimum payment by the due date shown on your billing statement."  *See* Exs. K, L (emphasis added).

94.     Accordingly, Macy's is a "furnisher" of information to consumer reporting agencies, with a duty to fulfill the statutory responsibilities enumerated under 15 U.S.C. § 1681s-2, including providing accurate information relating to consumers.  Macy's is also a "person" as defined by the FCRA.  *See* 15 U.S.C. § 1681a(b).

95.     The section of the credit card disclosures for the Macy's Amex (available at [https://www.macys.com/dyn_img/banners/Macys_American_Express_Card_Agreement.pdf](https://www.macys.com/dyn_img/banners/Macys_American_Express_Card_Agreement.pdf), and annexed hereto as **Exhibit N**) (the "Disclosures"), titled "Credit Reporting," states:

> <u>We may report information about your account to credit bureaus</u>. Late payments, missed payments, or other defaults on your account may be reflected in your credit report. We may report account information in your name and the names of authorized users. We may also obtain follow-up credit reports on you.
>
> If you think we reported incorrect information to a credit bureau, write us at the address shown on the back of your billing statement in the section titled "Disputed Accuracy of Credit Report". We will investigate the matter. We will then tell you if we agree or disagree with you. If we agree with you, we will contact each credit bureau to which we reported and request a correction. If we disagree with you, we will tell you that.

(emphasis added).

96.     The Disclosures define the terms "we, us, and our" as "<u>Citibank, N.A.</u>, the issuer of your account," and the terms "you, your, and yours" as "the person who applied to open the account . . . [and] any other person responsible for complying with this Agreement."  *See* Ex. N (emphasis added).

97.     Accordingly, Citibank is a "furnisher" of information to consumer reporting agencies, with a duty to fulfill the statutory responsibilities enumerated under 15 U.S.C. § 1681s-2, including providing accurate information relating to consumers.  Citibank is also a "person" as defined by the FCRA.  *See* 15 U.S.C. § 1681a(b).

98.     TransUnion is a "consumer reporting agency" ("CRA") as defined by the FCRA. *See* 15 U.S.C. § 1681a(f).

99.     Experian is a CRA as defined by the FCRA.  *See* 15 U.S.C. § 1681a(f).

100.    Equifax is a CRA as defined by the FCRA.[1]  *See* 15 U.S.C. § 1681a(f).

101.    The Defendant CRAs each individually qualify as a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis," as defined by the FCRA. *See* 15 U.S.C. §1681a(p).

### COUNT I
**Willful Reporting of Inaccurate Information to Consumer Reporting Agencies**
**(15 U.S.C. §§ 1681s-2, 1681n)**
***As To Macy's And Citibank***

102.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

103.    The FCRA prohibits furnishers from reporting information to a CRA "with actual knowledge of errors" and "after notice and confirmation of errors."  *See* 15 U.S.C. § 1681s-2(a)(1).

104.    Specifically, "[a] person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate."  *See* 15 U.S.C. § 1681s-2(a)(1)(A).  "The term 'reasonable cause to believe that the information is inaccurate' means having specific knowledge, other than solely

---

[1] TransUnion, Experian, and Equifax shall be referred to collectively herein as the "Defendant CRAs".

allegations by the consumer, that would cause a reasonable person to have substantial doubts about the accuracy of the information." 15 U.S.C. § 1681s-2(a)(1)(D).

105.    Additionally, "[a] person shall not furnish information relating to a consumer to any consumer reporting agency if -- (i) the person has been notified by the consumer, at the address specified by the person for such notices, that specific information is inaccurate; and (ii) the information is, in fact, inaccurate." *See* 15 U.S.C. § 1681s-2(a)(1)(B).

106.    A furnisher who receives an identity theft report from a consumer is also prohibited from furnishing information to a CRA that is the result of such identity theft.

107.    Upon receipt of notice of a dispute regarding the completeness or accuracy of information provided to a CRA, a furnisher of the disputed information must conduct a timely investigation and correct and discontinue any inaccurate reporting.

108.    Within thirty days of receipt of a notice of dispute, a furnisher must complete its investigation and report the results of the investigation to the consumer.

109.    Macy's and Citibank reported inaccurate account information regarding Plaintiff's Macy's Amex to the Defendant CRAs, which was incorporated into Plaintiff's credit reports issued by the Defendant CRAs.

110.    The inaccurate information included: (i) listing the Fraudulent Address as Plaintiff's current or former address; (ii) attributing the debt and responsibility for the fraudulent charges to Plaintiff; (iii) misrepresenting the account balance by including the disputed, fraudulent charges, and the related improper fees and interest; and (iv) reporting the account as past due as a result of the disputed charges.

111.    Upon information and belief, Macy's and Citibank each received notice of Plaintiff's multiple disputes regarding the accuracy of her Macy's Amex account information as reported to the Defendant CRAs.

112.    In connection with the disputes, Plaintiff advised that she had been the victim of identity theft and provided applicable identifying information and available supporting documentation, including copies of her driver's license and tax return to verify her address, and copies of the Identity Theft Reports.  *See* Ex. M.

113.    Macy's and Citibank thereafter deliberately failed and refused to conduct a proper or timely investigation of each dispute, and have continued inaccurately reporting information to the Defendant CRAs regarding Plaintiff's account, including information resulting from the identity theft.

114.    Specifically, Macy's and Citibank failed to review information provided by Plaintiff and information in Plaintiff's account file clearly substantiating Plaintiff's claims of identity theft, and failed to contact Plaintiff for any additional information.  Instead, months after receiving notice of each dispute, Macy's and Citibank summarily denied Plaintiff's claims without providing any specific detail underlying the cause for the determination.

115.    As a result of Macy's and Citibank's willful conduct in violation of the FCRA, Plaintiff has been damaged and is entitled to actual, statutory, and punitive damages, and recovery of attorneys' fees and costs incurred in connection with this action, pursuant to 15 U.S.C. § 1681n.

## COUNT II
### Negligent Reporting of Inaccurate Information to Consumer Reporting Agencies
### (15 U.S.C. §§ 1681s-2, 1681o)
#### *AS TO MACY'S AND CITIBANK*

116.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

117.    After receiving notice of Plaintiff's disputes regarding the accuracy of her Macy's Amex account as reported to the credit bureaus, Macy's and Citibank thereafter negligently failed and refused to conduct any required investigation, and have continued inaccurately reporting information to the credit bureaus regarding Plaintiff's Macy's Amex account, including falsely representing that the account is delinquent, in violation of 15 U.S.C. §§ 1681s-2(a)(2), 1681s-2(a)(6), and 1681s-2(a)(8).

118.    As a result of Macy's and Citibank's negligent conduct in violation of the FCRA, Plaintiff is entitled to actual and statutory damages, and recovery of attorneys' fees and costs incurred in connection with this action, pursuant to 15 U.S.C. § 1681o.

### COUNT III
**Willful Failure to Block Information Resulting from Identity Theft**
**(15 U.S.C. §§ 1681c-2, 1681n)**
***As To The Defendant CRAs***

119.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

120.    The FCRA requires CRAs to block the reporting of information resulting from identity theft when notified by the consumer:

> [A] consumer reporting agency shall block the reporting of any information in the file of a consumer that the consumer identifies as information that resulted from an alleged identity theft, not later than 4 business days after the date of receipt by such agency of-- (1) appropriate proof of the identity of the consumer; (2) a copy of an identity theft report; (3) the identification of such information by the consumer; and (4) a statement by the consumer that the information is not information relating to any transaction by the consumer.

15 U.S.C. § 1681c-2(a).

121.    CRAs are further required to notify the furnisher of such information "(1) that the information may be a result of identity theft; (2) that an identity theft report has been filed; (3) that

a block has been requested under this section; and (4) of the effective dates of the block." 15 U.S.C. § 1681c-2(b).

122.    If a CRA declines to block, or rescinds a block, of information resulting from identity theft, it must promptly notify the consumer "in the same manner as consumers are notified of the reinsertion of information under section 1681i(a)(5)(B) of this title." *See* 15 U.S.C. § 1681c-2(c).

123.    On December 21, 2023, Plaintiff mailed copies of the Notice of Dispute addressed to the Defendant CRAs, via certified mail, to TransUnion (USPS Tracking No. 9407111898765491807614), Experian (USPS Tracking No. 9407111898765491807942), Equifax (USPS Tracking No. 9407111898765491807744), and Macy's (USPS Tracking No. 9407111898765491807638). *See* Ex. M.

124.    USPS Tracking for the Notice of Dispute confirms each copy was delivered as follows: (i) to Macy's on December 24, 2023; (ii) to Equifax on December 26, 2023; (iii) to TransUnion on December 27, 2023; and (iv) to Experian on December 29, 2023.

125.    The Notice of Dispute included all information and documentation required for an identity theft block under 15 U.S.C. § 1681c-2(a). *See* Ex. M.

126.    Accordingly, within four (4) business days of receipt of the Notice of Dispute, each of the Defendant CRAs was obligated and required to block the reporting of information in Plaintiff's file resulting from the identity theft.

127.    Upon information and belief, the Defendant CRAs deliberately failed to timely implement the required block pursuant to 15 U.S.C. § 1681c-2(a).

128.    Upon information and belief, the Defendant CRAs further willfully declined to block the information and/or rescinded the block without authority or investigation, and without notifying Plaintiff, in violation of 15 U.S.C. § 1681c-2(c).

129.    As a result of the Defendant CRAs' willful conduct in violation of the FCRA, Plaintiff has been damaged and is entitled to actual, statutory, and punitive damages, and recovery of attorneys' fees and costs incurred in connection with this action, pursuant to 15 U.S.C. § 1681n.

**COUNT IV**
**Negligent Failure to Block Information Resulting from Identity Theft**
**(15 U.S.C. §§ 1681c-2, 1681o)**
*AS TO THE DEFENDANT CRAS*

130.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

131.    Upon receipt of the Notice of Dispute, each of the Defendant CRAs was obligated and required to block the reporting of information in Plaintiff's file resulting from the identity theft.

132.    Upon information and belief, the Defendant CRAs negligently failed to timely implement the required block pursuant to 15 U.S.C. § 1681c-2(a).

133.    Upon information and belief, the Defendant CRAs further negligently declined to block the information and/or rescinded the block without authority or investigation, and without notifying Plaintiff, in violation of 15 U.S.C. § 1681c-2(c)

134.    As a result of the Defendant CRAs' negligent conduct in violation of the FCRA, Plaintiff is entitled to actual and statutory damages, and recovery of attorneys' fees and costs incurred in connection with this action, pursuant to 15 U.S.C. § 1681o.

<u>**COUNT V**</u>
**Willful Failure to Assure Accuracy of Consumer Information in Credit Report**
**(15 U.S.C. §§ 1681e(b), 1681n)**
*AS TO THE DEFENDANT CRAS*

135.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

136.    "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  15 U.S.C. § 1681e(b).

137.    The Defendant CRAs each received Plaintiff's Notice of Dispute demonstrating that Plaintiff was the victim of identity theft, and evidence that Plaintiff's credit report contained inaccurate information.

138.    Despite receipt of the foregoing, the Defendant CRAs deliberately failed and refused to undertake a reasonable investigation to ensure the accuracy of reported information concerning Plaintiff and the Macy's Amex account.

139.    Although the information Plaintiff provided should have been sufficient to verify that the disputed information in Plaintiff's credit report was inaccurate, the Defendant CRAs failed and refused to properly review it, and further failed and refused to contact Plaintiff for any additional information that would assist in a reasonable investigation.

140.    Accordingly, the Defendant CRAs continued producing credit reports for Plaintiff containing inaccurate and damaging credit information.

141.    The Defendant CRAs' failure to follow reasonable procedures to assure maximum possible accuracy of the information in their reports was malicious, intentional, reckless, and willful.

142.     As a result of the Defendant CRAs' willful conduct in violation of the FCRA, Plaintiff has been damaged and is entitled to actual, statutory, and punitive damages, and recovery of attorneys' fees and costs incurred in connection with this action, pursuant to 15 U.S.C. § 1681n.

## COUNT VI
### Negligent Failure to Assure Accuracy of Consumer Information in Credit Report
### (15 U.S.C. §§ 1681e(b), 1681o)
#### AS TO THE DEFENDANT CRAS

143.     Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

144.     Despite receipt of evidence that Plaintiff's credit report contained inaccurate information, the Defendant CRAs failed to establish and follow reasonable procedures to promptly investigate and ensure the accuracy of reported information concerning Plaintiff and the Macy's Amex account.

145.     Accordingly, the Defendant CRAs continued producing credit reports for Plaintiff containing inaccurate and damaging credit information.

146.     As a result of the Defendant CRAs' negligent conduct in violation of the FCRA, Plaintiff is entitled to actual and statutory damages, and recovery of attorneys' fees and costs incurred in connection with this action, pursuant to 15 U.S.C. § 1681o.

## COUNT VII
### Willful Failure to Assure Accuracy of Consumer Information in Credit File
### (15 U.S.C. §§ 1681i, 1681n)
#### AS TO THE DEFENDANT CRAS

147.     Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

148.     "[I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer

notifies the agency . . . of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file . . . ." 15 U.S.C. § 1681i(a)(1)(A).

149.   This investigation must be completed within thirty (30) days of the CRA's receipt of notice of the dispute.   *See id.*

150.   The CRA must also provide notice of the dispute to any furnisher of the disputed information, within five (5) business days of receipt.

151.   "In conducting any reinvestigation under paragraph (1) with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer in the period described in paragraph (1)(A) with respect to such disputed information."  15 U.S.C. § 1681i(a)(4).

152.   Within five (5) business days of completing a reinvestigation, a CRA must provide the consumer with written notice of the results and additional statutory notices.

153.   Upon receipt of Plaintiff's Notice of Dispute, the Defendant CRAs deliberately failed and refused to undertake the required reinvestigation of Plaintiff's credit file, and to ensure the accuracy of reported information concerning Plaintiff and the Macy's Amex account.

154.   Although the information Plaintiff provided should have been sufficient to verify that the disputed information in Plaintiff's credit file was inaccurate, the Defendant CRAs failed and refused to properly review it, and further failed and refused to contact Plaintiff for any additional information that would assist in a reasonable investigation.

155.    Upon information and belief, the Defendant CRAs failed to provide Plaintiff with written notice of the results of the investigation, or any of the additional required statutory notices, in violation of 15 U.S.C. § 1681i.

156.    The Defendant CRAs further failed to correct inaccurate and damaging credit information contained in Plaintiff's credit file.

157.    The Defendant CRAs' failure to follow reasonable procedures to assure maximum possible accuracy of the information in their credit files was malicious, intentional, reckless, and willful.

158.    As a result of the Defendant CRAs' willful conduct in violation of the FCRA, Plaintiff has been damaged and is entitled to actual, statutory, and punitive damages, and recovery of attorneys' fees and costs incurred in connection with this action, pursuant to 15 U.S.C. § 1681n.

**COUNT VIII**
**Negligent Failure to Assure Accuracy of Consumer Information in Credit File**
**(15 U.S.C. §§ 1681i, 1681o)**
*AS TO THE DEFENDANT CRAS*

159.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

160.    Upon receipt of Plaintiff's Notice of Dispute, the Defendant CRAs had a duty to undertake the required reinvestigation of Plaintiff's credit file, and to ensure the accuracy of reported information concerning Plaintiff and the Macy's Amex account.

161.    The Defendant CRAs failed to investigate Plaintiff's dispute or to properly consider the information Plaintiff submitted in connection with the dispute, and further failed and refused to contact Plaintiff for any additional information that would assist in a reasonable investigation.

162.    The Defendant CRAs further failed to correct inaccurate and damaging credit information contained in Plaintiff's credit file, or to provide Plaintiff with written notice of the results and additional required statutory notices, in violation of 15 U.S.C. § 1681i.

163.    As a result of the Defendant CRAs' negligent conduct in violation of the FCRA, Plaintiff is entitled to actual and statutory damages, and recovery of attorneys' fees and costs incurred in connection with this action, pursuant to 15 U.S.C. § 1681o.

## VIOLATIONS OF THE FDCPA
### (15 U.S.C. § 1692, *et seq.*)

164.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

165.    Plaintiff is a "consumer" as defined by the FDCPA.  *See* 15 U.S.C. § 1692a(3).

166.    Macy's is a "debt collector" as defined by the FDCPA.  *See* 15 U.S.C. § 1692a(6).

167.    Billing statements for the Macy's Amex direct account holders to make checks payable to "Macy's," and advise that payments can also be made "at any Macy's store, online at macys.com/credit, or by mail [to the Macy's address provided]."  *See* Exs. B-E.

168.    Regarding "Lost or Stolen Cards," the Disclosures state:

> You must call us if any card, account number, or check is lost or stolen. You must also call us if you think someone used or may use them without permission. When you call, we may require you to provide information to help our investigation. We may require you to provide this information in writing. For example, we may ask you to identify any charges that were not made by you or someone authorized by you. We may also ask you to confirm that you received no benefit from those charges.

*See* Ex. N.

169.    Plaintiff has contacted Macy's repeatedly to report the unauthorized use of her Macy's Amex, and to identify dispute all fraudulent charges.   Plaintiff has also provided

documentation supporting these claims, and Macy's has failed and refused to investigate or resolve Plaintiff's dispute.

## COUNT IX
### Use of False, Deceptive, or Misleading Representations
### (15 U.S.C. §§ 1692e, 1692k)
### *AS TO MACY'S*

170.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

171.    The FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.

172.    Examples of prohibited false or misleading representations include: (i) falsely representing the "character, amount, or legal status of any debt" (15 U.S.C. § 1692e(2)(A)); (ii) "threat[ening] to take any action that cannot legally be taken or that is not intended to be taken" (15 U.S.C. § 1692e(5)); (iii) "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed" (15 U.S.C. § 1692e(8)); and (iv) "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt" (15 U.S.C. § 1692e(10)).

173.    Macy's has falsely attributed responsibility for the fraudulent debt on the Macy's Amex to Plaintiff, despite evidence demonstrating that Plaintiff was the victim of identity theft and did not make or authorize the disputed charges.  Macy's has deliberately ignored such evidence, and failed and refused to investigate Plaintiff's disputes and claims of identity theft.

174.    Macy's has sent Plaintiff numerous notices and statements containing debt collection language and demands for payment of the fraudulent, disputed debt, and misrepresentations regarding the status of the account and amounts owed.

175.    Macy's has also sent Plaintiff numerous notices threatening to report the account as "past due" to consumer reporting agencies if Plaintiff does not submit payment for the disputed debt.

176.    Plaintiff has repeatedly informed Macy's of the account errors and disputed the alleged debt, but Macy's continues to represent that the account is delinquent and in "collection/chargeoff" status, that the dispute has been "resolved," and that the debt has been charged off as "bad debt." Macy's continues to provide this false delinquency information to credit reporting agencies.

177.    Macy's actions and failure to correct errors in Plaintiff's account, despite being notified of such errors, have also resulted in the addition of improper and illegal fees, interest, and other charges related to the fraudulent debt, thereby further falsely inflating the balance on the account.

178.    As a result of the foregoing violations, Plaintiff is entitled to actual and statutory damages, and recovery of attorneys' fees and costs incurred in connection with this action, pursuant to 15 U.S.C. § 1692k.

### COUNT X
**Use of Unfair or Unconscionable Means to Collect a Debt**
**(15 U.S.C. §§ 1692f, 1692k)**
*AS TO MACY'S*

179.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

180.     The FDCPA prohibits a det collector from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.

181.     Prohibited collection activity includes "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

182.     Macy's has improperly sought to collect a fraudulent debt from Plaintiff that resulted from identity theft. Macy's has also added improper and illegal fees, interest, and other charges to Plaintiff's account, thereby further falsely inflating the alleged account balance and amounts owed.

183.     Macy's has sent Plaintiff statements and other documents containing debt collection language and misrepresentations regarding the status of the account and amounts owed, including the illegal fees, interest, and other charges added to Plaintiff's account.

184.     As a result of the foregoing violations, Plaintiff is entitled to actual and statutory damages, and recovery of attorneys' fees and costs incurred in connection with this action, pursuant to 15 U.S.C. § 1692k.

### STATE LAW CLAIMS

### COUNT XI
**Willful Reporting of Inaccurate Information to Consumer Reporting Agencies**
**(N.Y. Gen. Bus. Law § 380-o)**
**AS TO MACY'S AND CITIBANK**

185.     Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

186.     Sections 374 through 382-b of Article 25 of the New York General Business Law ("GBL") codify New York's Fair Credit Reporting Act ("NYFCRA").

187.    Plaintiff is a "consumer" within the meaning of the NYFCRA.  *See* GBL § 380-a(b).

188.    Macy's and Citibank are "persons" within the meaning of the NYFCRA.  *See* GBL § 380-a(a).

189.    The NYFCRA prohibits the knowing and willful introduction, or attempt to introduce, false information into a consumer reporting agency's files.  *See* GBL § 380-o(2). Persons who violate Section 380-o are subject to fines of up to $5,000.00, imprisonment, or both. *See id.*

190.    As a result of Macy's and Citibank's knowing and willful introduction of false information regarding Plaintiff's account into the files of the consumer credit bureaus, Macy's and Citibank have violated the NYFCRA and are liable to Plaintiff in an amount up to $5,000.00, to be determined by the Court.

191.    Macy's and Citibank are further liable to Plaintiff pursuant to GBL § 380-l, for actual damages, punitive damages, and attorneys' fees and costs incurred in connection with this action, in an amount to be determined by the Court.

**COUNT XII**
**Deceptive Acts**
**(N.Y. Gen. Bus. Law § 349)**
*AS TO MACY'S AND CITIBANK*

192.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

193.    New York law provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."  GBL § 349.

194.     "To maintain a cause of action under § 349, a plaintiff must show: (1) that the defendant's conduct is 'consumer-oriented'; (2) that the defendant is engaged in a 'deceptive act or practice'; and (3) that the plaintiff was injured by this practice."  *See Wilson v. Northwestern Mut. Ins. Co.*, 625 F.3d 54, 64 (2d Cir. 2010).

195.     "The 'consumer-oriented' requirement may be satisfied by showing that the conduct at issue 'potentially affect[s] similarly situated consumers.'"  *Id.*

196.     Macy's self-identifies as "one of the world's largest retailers," owning a "portfolio of nameplates" including the Macy's department store, Bloomingdale's department store, and Bluemercury.  *See* https://www.macysinc.com/investors/default.aspx.

197.     Macy's aggressively markets and promotes its company-branded credit card programs to consumers, including the Macy's American Express® Card, which offer company-related "benefits" to cardholders.

198.     The Macy's American Express® Card, issued by Citibank, advertises new cardholder discounts, "members-only benefits" at Macy's, "exclusive travel and entertainment benefits," and earned "points" on purchases made outside of Macy's.  *See* https://www.macys.com/p/credit-service/benefits/?acquisitionOrigin=GlbNavFooterBenefits.

199.     Citibank markets its private label and co-branded credit cards (like the Macy's American Express® Card) to retailers like Macy's to "boost loyalty," advertising that "[w]ith rewards options that increase revenue, private label and co-branded credit cards drive engagement and provide incentive to your most loyal customers."  *See* https://partner.citi.com/products/credit-cards.

200.     Citibank further advertises that its "[p]rivate label cards have public appeal," which "increases buying power, drives repeat spending and establishes community."  *Id.*

201.     In the September 2022 SAL, Macy's claimed that "[b]ased on routine account monitoring, we discovered that your account has suspicious activity," and "strongly encourage[d] [Plaintiff] to contact [them] . . . to review [Plaintiff's] account activity."  *See* Ex. A.

202.     The September 2022 SAL further advised:

> Protecting your account and personal information is very important to us.  This is why we established several programs to protect the security and privacy of your account, including the Fraud Early Warning Program.  The program was developed to identify fraud in its earliest stages, protecting you from potential fraud on your account.  To learn more about how we protect you, please contact us.

*See* Ex. A.

203.     Citibank's Disclosures for the Macy's Amex also advise that it will investigate if a consumer reports a card lost or stolen, or that they "think someone used or may use them without permission."  *See* Ex. N.

204.     Plaintiff relied on these representations in contacting Macy's to report the identity theft and dispute the fraudulent charges, but Macy's ignored Plaintiff's repeated attempts to stop the fraud, and failed to investigate secure Plaintiff's account.

205.     Macy's also misrepresented that its "Fraud Early Warning Program . . . identif[ies] fraud in its earliest stages, protecting you from potential fraud on your account," as Macy's failed to even notify Plaintiff of the "suspicious activity" on her account until months after it occurred, and after dozens of additional fraudulent transactions were made with Plaintiff's Macy's Amex.

206.     As a result of these deceptive acts and practices of Macy's and Citibank (both individually and by and through Macy's, as its agent), Plaintiff's credit has been ruined, causing Plaintiff significant damage.

207. Given that Macy's and Citibank are huge national corporations which aggressively promote and market these credit cards to consumers across the county, these deceptive acts and practices will impact not only Plaintiff, but will also have a broader impact on consumers at large.

208. Accordingly, pursuant to GBL § 349(h), Plaintiff is entitled to recover (i) actual damages or fifty dollars, whichever is greater; or, in the Court's discretion, an amount not to exceed three times the actual damages, up to one thousand dollars; and (ii) reasonable attorneys' fees incurred in bringing this action.

**COUNT XIII**
**Failure to Investigate and Resolve Consumer Dispute**
**(N.Y. Gen. Bus. Law §§ 380-f, 380-m)**
*AS TO THE DEFENDANT CRAS*

209. Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

210. Pursuant to GBL § 380-f(a):

If a consumer disputes any item of information contained in his file, and such dispute is directly conveyed to the consumer reporting agency by the consumer, the consumer reporting agency shall promptly re-investigate and record the current status of such information, unless it has reasonable grounds to believe that the dispute by the consumer is frivolous, and it shall promptly notify the consumer of the result of its investigation, its decision on the status of the information and his rights pursuant to this section.

211. Upon receipt of Plaintiff's Notice of Dispute, the Defendant CRAs were obligated to investigate Plaintiff's claims and notify Plaintiff of the results of its investigation.

212. The Defendant CRAs failed to undertake any investigation of Plaintiff's dispute, or to review any information provided in connection with the dispute, and likewise failed to revise or correct any of the inaccurate information contained in Plaintiff's credit file.

213. The Defendant CRAs further failed to notify Plaintiff of the results of its investigation.

214.   As a result of the Defendant CRAs' failure to comply with the requirements of GBL § 380-f, Plaintiff is entitled to recover actual damages, together with reasonable attorneys' fees and costs pursuant to GBL § 380-m.

## DEMAND FOR JURY TRIAL

215.   Pursuant to Fed. R. Civ. P. 38, Plaintiff respectfully requests a trial by jury on all issues so triable.

**WHEREFORE**, Plaintiff respectfully demands judgment awarding all actual, statutory, and/or punitive damages and other relief available pursuant to applicable law, including:

(a) actual, statutory, and punitive damages, and recovery of attorneys' fees and costs pursuant to 15 U.S.C. § 1681n;

(b) actual and statutory damages, and recovery of attorneys' fees and costs pursuant to 15 U.S.C. § 1681o;

(c) actual and statutory damages, and recovery of attorneys' fees and costs pursuant to 15 U.S.C. § 1692k;

(d) actual, statutory, and punitive damages, and recovery of attorneys' fees and costs pursuant to GBL § 380-l;

(e) actual and statutory damages, and recovery of attorneys' fees and costs pursuant to GBL § 349(h);

(f) actual damages and recovery of attorneys' fees and costs pursuant to GBL § 380-m; and

(g) such other and further relief as this Court deems just and proper.

Dated:  Brooklyn, New York
    May 4, 2024

**PETROFF AMSHEN LLP**
*Attorneys for Plaintiff,*
Liqing Jiang

/s/ Steven Amshen
Steven Amshen, Esq. (ID No. SA2569)
1795 Coney Island Avenue, Third Floor
Brooklyn, New York 11230
Telephone: (718) 336-4200
Email: samshen@petroffamshen.com

*Liqing Jiang v. Citibank, N.A., et al.*

## **SUMMARY OF EXHIBITS**

**Exhibit A** – September 12, 2022 Suspicious Activity Letter ("September 2022 SAL")

**Exhibit B** – Statement Due September 6, 2022 ("September 2022 Statement")

**Exhibit C** – Statement Due October 6, 2022 ("October 2022 Statement")

**Exhibit D** – Statement Due November 6, 2022 ("November 2022 Statement")

**Exhibit E** – Statement Due December 6, 2022 ("December 2022 Statement")

**Exhibit F** – November 23, 2022 Letter ("Account Closing Letter")

**Exhibit G** – Statement Due January 6, 2023 ("January 2023 Statement")

**Exhibit H** – Statement Due February 6, 2023 ("February 2023 Statement")

**Exhibit I** – January 27, 2023 Suspicious Activity Letter ("January 2023 SAL")

**Exhibit J** – March 17, 2023 Letter ("Fraud Claim Acknowledgment")

**Exhibit K** – June 15, 2023 Letter ("First Fraud Claim Denial")

**Exhibit L** – November 9, 2023 Letter ("Second Fraud Claim Denial")

**Exhibit M** – December 21, 2023 Notice of Dispute ("Notice of Dispute")

**Exhibit N** – Macy's American Express® Card Credit Card Disclosures ("Disclosures")